IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| RACHEL O'BRIEN, | |
| Plaintiff, | |
| v. | Case No. _____ |
| YOUTH VILLAGES, INC. d/b/a YOUTH VILLAGES, | **JURY DEMANDED** |
| Defendant. | |

## COMPLAINT

The plaintiff Rachel O'Brien brings this action against her former employer Youth Villages, Inc. d/b/a Youth Villages for pregnancy discrimination in violation of Title VII as amended by the Pregnancy Discrimination Act, 42 U.S.C. § 2000e–2, and for unlawful violations of Ms. O'Brien's rights under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. In support, Ms. O'Brien states as follows:

### I. Parties

1. The plaintiff Rachel O'Brien is an adult woman who currently resides in Shelby County, Tennessee.

2. The defendant Youth Villages, Inc. d/b/a Youth Villages is a Tennessee nonprofit corporation with its principal office located at 3320 Brother Blvd., Bartlett, TN 38133. At all relevant times, Youth Villages was an "employer" (of more than 15 persons) of Plaintiff within the provisions of Title VII and the ADA. Youth Villages is bound by the laws and regulations concerning Title VII and the ADA. Youth Villages may be served with process through its registered agent, Patrick Lawler, at 3320 Brother Blvd., Bartlett, TN 38133.

## II. Jurisdiction and Venue

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. Ms. O'Brien filed a charge of discrimination with the EEOC on May 6, 2022. Over 180 days after filing her charge, Ms. O'Brien was issued a Notice of Right to Sue letter on January 20, 2023. Ms. O'Brien now commences this action within the requisite time period. Accordingly, Ms. O'Brien has exhausted all administrative remedies under Title VII and the ADA. The EEOC charge and Notice of Right to Sue letter are attached to this Complaint as **Exhibit A** & **Exhibit B, respectively.**

4. This Court also has personal jurisdiction over Youth Villages which, at all relevant times, conducted business in the Western District of Tennessee. In particular, Youth Villages operated the schools where Ms. O'Brien worked in Shelby County, TN. Venue is proper under 28 U.S.C. § 1391(b)(1), (2) & (c)(2).

## III. Facts

5. Ms. O'Brien is an experienced teacher and behavioral health professional. Prior to joining Youth Villages, she worked for seven years in behavioral health with Washington County (Vermont) Mental Health ("WCMH") and the Soulsville Charter School in Memphis, TN. At WCMH, Ms. O'Brien maintained a caseload of 40-60 children where, among other duties, she used applied behavioral analytics to create behavioral plans for her kids. Additionally, she provided leadership and training to teachers, staff, administrative teams, and Individualized Education Program (IEP) teams on classroom management skills. Throughout her five years at WCMH, Ms. O'Brien maintained a Handle With Care® certification and never once had a complaint or injury. At Soulsville, Ms. O'Brien worked as an environmental science teacher and her classes experienced

standardized testing score growth even during the Covid-19 pandemic. Outside of the classroom, Ms. O'Brien is a member of the Tennessee Science Teachers Association and has presented at conferences for the organization.

6. In May of 2021, Ms. O'Brien was hired by Youth Villages as a high school science teacher. However, she did not begin working until August 3rd, 2021 and began teaching in early September of that year. Throughout her employment, Ms. O'Brien was a dedicated teacher who performed her job duties at a high level and to the satisfaction of her employer.

7. Ms. O'Brien briefly worked as a high school science teacher for Youth Villages-Bill's Place. After being subjected to poor treatment by Youth Villages staff and expressing to the administration concerns about the school's teacher's assistants' ("TA" or "TAs") inappropriate interactions with students, she requested either increased resources to adequately train TAs or a transfer to another Youth Villages school. Ms. O'Brien was transferred to Youth Villages-Bartlett School.

8. Youth Villages-Bartlett School is for boys and girls with serious emotional and behavioral problems.

9. Starting from the second week of September, Ms. O'Brien taught in a self-contained special education classroom for high-school age students. For a special education class of the size Ms. O'Brien was teaching, a proper staff-to-student ratio required Youth Villages to staff Ms. O'Brien's classroom with three teacher's assistants.

10. TAs were necessary for the classroom for multiple reasons, one of which was assisting in performing physical restraints on the children when necessary.

11. One TA was assigned to Ms. O'Brien's classroom–Ms. Willie Wilkerson.

12. On September 19, 2021, Ms. O'Brien informed Youth Villages, through her supervisor, Darnell Austin, that she was pregnant.

13. Because the classroom was not adequately staffed, Ms. O'Brien was not able to leave the classroom under any circumstances because she could not leave the students unsupervised. Consequently, Ms. O'Brien could not take a bathroom or lunch break. Although any employee would expect to be able to take a bathroom break and eat lunch over the course of a workday, it is even more important for a pregnant woman.

14. As a result of these working conditions, Ms. O'Brien required hospitalization on September 29, 2021 with a bladder infection, high ketone levels, and severe dehydration. Pregnant women are at a heightened risk for bladder infections, and a lack of ability to void increases that already high risk. Despite these conditions and their potential effects on her pregnancy, Ms. O'Brien continued to work for Youth Villages.

15. On November 19, 2021, Ms. O'Brien had her 18-week pregnancy checkup. At the checkup, high levels of ketones were detected in her urine. High ketone levels can lead to pregnancy complications. Because of her earlier trip to the hospital and consistently high ketone levels, Ms. O'Brien was placed on the following work restrictions by her health care provider: (1) adequate bathroom breaks; (2) a lunch break; and (3) ceasing to perform restraints.

16. Ms. O'Brien returned to Youth Villages and informed Mr. Austin of her work restrictions. Mr. Austin told Ms. O'Brien to finish out the day in her classroom but that she could not continue working in the classroom if she could not perform restraints. At the end of the school day, Ms. O'Brien was instructed to return her school-issued laptop and had her access to Freckle, an online literacy learning program used in the classroom, deactivated.

17. Ms. Wilkerson, the only TA in Ms. O'Brien's classroom, was an older woman with asthma and did not perform restraints. After Ms. O'Brien's conversation with Mr. Austin on November 19, Ms. O'Brien asked Ms. Wilkerson about any accommodations she had received from Youth Villages. Ms. Wilkerson told Ms. O'Brien that she did not have any formal accommodations, but Youth Villages was aware she did not perform restraints.

18. On the same day, November 19, Ms. O'Brien received two conflicting communications from John Cooke, the Assistant Director of Human Resources at Youth Villages. First, in an email to Ms. O'Brien, Mr. Cooke stated:

> Your program has let us know that you are currently unable to perform physical restraints. **Unfortunately, the ability to perform restraints is considered an essential part of your job, so we are therefore unable to accommodate that. You will be unable to return to work until cleared to complete all essential job duties, with or without reasonable accommodation.** Attached you will find formal acknowledgement of your request as well as a certification form to be completed by your health care provider that will help us better understand your current medical condition, how it impacts your ability to perform you[r] job duties and whether there are any reasonable accommodations available that will allow you to return to work . . . .

(emphasis added).

19. Attached to the email from Mr. Cooke, was a letter with the subject "RE: REQUEST FOR ACCOMODATION." In the letter, Mr. Cooke claims to offer Ms. O'Brien the opportunity to engage in the "interactive process," stating:

> As a result of your conversation with Darnell Austin on November 19, 2019, it appears that your ability to satisfactorily perform certain of the essential functions of your job as a Teacher may be hindered due to a medical condition. We have treated your discussion of your condition and its impact upon your ability to perform certain essential job functions as a request for a reasonable accommodation.
>
> While you may be entitled to some reasonable accommodation under the Americans with Disabilities Act ("ADA") and/or applicable state law, we must

first engage in a dialogue with you in order to determine the nature of your condition, the nature and extent of any physical or mental limitations that you may have as a result of your condition, and whether there may be some reasonable accommodation that would allow you to satisfactorily perform the essential functions of your job. This is referred to as the "interactive process."

20. Since Mr. Cooke stated explicitly in his email on November 19, 2021 that Youth Villages would not be able to accommodate her work restriction related to restraints, the "interactive period" Youth Villages claimed to offer Ms. O'Brien was only related to her requests for bathroom and lunch breaks.

21. Ms. O'Brien gave Youth Villages' ADA documents to her healthcare provider on November 22, 2021. Her healthcare provider returned the documents to Ms. O'Brien on December 16, 2021, stating that Ms. O'Brien was pregnant and unable to perform restraints. She listed the risk of continuing to perform restraints as "fetal demise." Ms. O'Brien returned the documents to Mr. Cooke on December 24, 2021, and four days later, on December 28, 2021, received the following email communication from Mr. Cooke:

> Good morning Ms. O'Brien,
>
> I have reviewed the documents from your doctor. They don't reflect that there is any physical limitation for why you cannot perform physical restraints. It appears that the recommendation to refrain from holds is due to safety concerns.
>
> In addition, while the breaks are certainly something we should be able to accommodate, the no physical restraints until your due date would be an undue hardship, as that is still nearly five months away. If you are unable to complete the essential duties of your job, which includes physical interventions as necessary, then you would have to be placed on leave. However, you also do not qualify for leave. But even if you did, it would be over 6 months before you could return to full duty which would be beyond any amount of leave that could be approved anyway.
>
> If your doctor will not clear you to participate in restraints in any way, then the only alternative would be for you to find a different position that does not require holds. While I cannot guarantee you a position, I am happy to help you look for positions and ensure you can interview for anything you qualify for.

22. Youth Villages terminated Ms. O'Brien from her teaching role at Youth Villages on December 28, 2021.

23. The job description for a Teacher/Lead Teacher at Youth Villages lists seventeen "Essential Duties and Responsibilities." Performing physical interventions and restraints is not listed. Restraints are only mentioned under the heading "Physical Demands – Additional Information," which seems to be a sub-heading of "Experience Requirements," in the following sentence: "Regularly participates in physical intervention and restraint of client, being able to hold 40+ pounds for a minimum of 15 minutes."

24. In the same section, other "additional information" listed includes: (1) operating a computer and other office machinery (*e.g.*, a calculator), and (2) regularly moving throughout the office to access file cabinets and office machinery.

25. The job description for a Teacher Assistant does not contain a list of essential duties and responsibilities; however, under the heading "Responsibilities- Additional Information," the job description contains the following:

> The supervision and treatment of youth requires prolonged periods of walking and standing and physical agility. May be required to run and climb flights of stairs. **Must be able to participate in physical interventions with youth when necessary.** Must frequently lift and/or move up to 50 pounds, and occasionally lift and/or move more than 100 pounds. **Will be required to complete Crisis Prevention Institute (CPI) and CPR training.**
>
> Applicants are required to pass an agility and strength evaluation.

(emphasis added).

26. Ms. O'Brien was a Teacher at Youth Villages. Ms. Wilkerson was, and upon information and belief, still is, a TA. Ms. O'Brien's job description provides that she will regularly participate in physical intervention restraints. Ms. Wilkerson's job description provides that she

must be able to participate in physical interventions when necessary and is required to complete CPI and CPR training. Ms. O'Brien was removed from the classroom because she could not perform restraints. Ms. Wilkerson remained in the classroom despite not being able to perform restraints.

27. Prior to her pregnancy, when situations arose in Ms. O'Brien's class requiring restraints, she had to call the administration into the classroom for assistance. Despite claiming that it would be an undue hardship to accommodate Ms. O'Brien's work restrictions, Youth Villages never provided Ms. O'Brien with the classroom environment necessary to safely perform CPI-approved restraints. Ms. O'Brien taught high-school aged, special education students. At a minimum, two persons were required to properly perform restraints. Ms. O'Brien's classroom was only staffed with one TA who could not perform restraints.

28. In Youth Villages' ADA documentation, Ms. O'Brien's healthcare provider suggested that Youth Villages have other personnel perform the restraints as a reasonable alternative accommodation. That recommendation is in line with Youth Villages' own job descriptions which put a greater emphasis on the TA's responsibilities to become CPI certified and perform physical interventions and restraints. Youth Villages could have staffed its classrooms with an adequate staff-to-student ratio and provided Ms. O'Brien with the necessary number of TAs. Instead, Youth Villages discriminated against Ms. O'Brien in violation of Title VII and the ADA.

### IV. Causes of Action

29. Ms. O'Brien incorporates the paragraphs above as if specifically set forth herein, and for her causes of action asserts:

## Count I: Disparate Treatment Under Title VII

30.     Pregnancy discrimination is unlawful under Title VII. Youth Villages acted intentionally and with reckless disregard for Ms. O'Brien's statutory rights. As a result of Youth Villages' discriminatory conduct, Ms. O'Brien was terminated from her teaching role. Facing six months without pay, Ms. O'Brien was forced to find another job that would allow her to continue working in education while pregnant.

31.     At the same time Ms. O'Brien was being discriminated against based on her pregnancy, a similarly situated, nonpregnant employee was treated differently and allowed to remain in the classroom.

## Count II: Disparate Impact Under Title VII

32.     Youth Villages' claimed employment practice to remove any teacher from the classroom who cannot perform restraints has a disparate impact on women, generally, but specifically, pregnant women.

33.     Youth Villages cannot show that this practice is consistent with business necessity because, at all times, Youth Villages should provide its teachers with a sufficient staff-to-student ratio allowing a pregnant teacher to rely on 2 or 3 CPI-trained TAs to restrain students when necessary.

34.     Ms. O'Brien's healthcare provider suggested this reasonable alternative employment practice, but Youth Villages refused to adopt it.

## Count III: Failure to Accommodate Under the ADA

35.     Ms. O'Brien is an experienced teacher and behavioral health professional who performed her job duties at a high level.

36. Throughout her pregnancy, Ms. O'Brien had consistently high ketone levels, dehydration, and a bladder infection which required hospitalization and monitoring from her healthcare provider. These pregnancy-related conditions prevented Ms. O'Brien from being able to perform physical tasks.

37. Ms. O'Brien requested accommodations for her pregnancy related limitations but was denied accommodations by Youth Villages.

38. Youth Villages allowed a similarly situated, nonpregnant employee to remain in the classroom without performing restraints, and Youth Villages could have adequately staffed the classroom with the staff-to-student ratio required for a special education class the size of the one Ms. O'Brien taught.

## V. Damages

39. As a direct result of Youth Villages' unlawful actions, Ms. O'Brien has suffered non-economic harm in the form of emotional distress, anxiety, and depression. Additionally, as a direct result of Youth Villages' unlawful actions, Ms. O'Brien has suffered economic harm in the form of lost wages, benefits, and medical expenses.

## VI. Relief Requested

40. WHEREFORE, Ms. O'Brien prays that the Court cause service to be issued upon Youth Villages and further demands a jury to hear this cause, and upon a hearing thereon, prays that the Court:

a. Award Ms. O'Brien back pay, lost benefits, and other pecuniary losses proximately caused by Youth Villages' unlawful conduct;

  b. Award Ms. O'Brien compensatory damages in an amount to be determined by the jury;

  c. Award Ms. O'Brien punitive damages in an amount to be determined by the jury;

  d. Award Ms. O'Brien all costs, disbursements, pre-judgment interest, post-judgment interest, expert witness fees, and reasonable attorneys' fees allowed under actions brought pursuant to Title VII and the ADA; and

  e. Such further relief as is deemed just and proper.

        Respectfully submitted,

        Harris Shelton Hanover Walsh, PLLC

        _____
        Louis J. Bernsen  TN BPR No. 039480

        6060 Primacy Parkway, Suite 100
        Memphis, Tennessee 38119
        (901) 525-1455 (Telephone)
        (901) 526-4084 (Fax)
        lbernsen@harrisshelton.com
        *Attorney for Rachel O'Brien*